May it please the court. Your honors, my name is Jason O'Rourke. I represent Davenport Police Sergeant Brian Stevens, who is with me today. This case arises out of the arrest of a violent felon who beat a man into a vegetative state and then led police on a high-speed chase when they attempted to arrest him, after last being seen with a handgun. Mr. Shelton's force to take him down and to arrest him and to eventually gain control of his hands after he turtled up in a very dangerous position. The district court properly granted summary judgment for four of the officers who used force and were involved in the case, but improperly denied the motion with respect to Sergeant Stevens. We would respectfully request that the court reverse that decision and hold that Sergeant Stevens is entitled to qualified immunity as a matter of law. I know your honors are very familiar with the standards that apply to these cases. We see them frequently out of this circuit, so I won't dwell a lot on the law, but I think it's important to keep in mind the directive from the Supreme Court earlier this year in the City of Escondido case, where they again reminded us that it does not suffice for a court to simply state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the violated, clearly established right, unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. We have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. That's what we don't have here. There is no case identified in the district court's decision or in any of plaintiff's filings that demonstrate an officer acting under similar circumstances was found to have violated the Fourth Amendment. What about the Montoya case, the leg suite case? I think that differs, your honor, in that the situation here. Our situation here is a case where the suspect, a violent felon who had beat a man, was not under control at the time of the arrest, or at the time Mr. Stevens stepped on his foot. We step back, what's important to consider is, when we consider the Graham factors, the severity of the crime. While we're dealing with... Now wait, now you're going to a level of generality. Before you do that, how about Henderson? These are all, as you know, in your opponent's brief. I don't mean to... Certainly. ...to spring them on you. Page 24. Henderson. The Henderson case, boy, that's awfully close, breaking an ankle. I think the main difference, your honor, in Henderson is, in Henderson, at the time, what that case turned on was actually the use of pepper spray. And at the time the individual was pepper sprayed, he was fully cuffed. His hands were cuffed behind his back. We don't have that here. At the time Sgt. Stevens stepped on Mr. Shelton's foot, Mr. Shelton was still turtled up. Did he step on it, or did he stomp on it? He described it as a stomp. I think it's... I don't like that word, though. I mean, you can call it a step, you can call it a stomp. The video shows what it is. We don't dispute that he stepped or stomped, whichever we want to call it, on his foot. But he wasn't under control at the time. And that's the critical difference between many of these cases that the plaintiff cites. How many men were on top of him? How many men were on top of him? How many officers? There were a handful, honestly, admittedly. But what we have to consider is not the number of men involved in the arrest or on top of him, but the fact is, the testimony was, he's turtled up. This, the officers described, is a very dangerous position for officers. He's last seen with a handgun. He's a violent felon. He's seen with a handgun. He refuses to stop, to get on the ground like he's told to. He's underneath. The district court noted that he had a hard object in his pocket that he appeared to be reaching for. He's turtled up. All he has to do is twist one to two inches, and boom, an officer dies. We look at the reasonableness of the circumstances, and we look at the fact that Officer Robinson, Officer Robinson and Sergeant Stevens were approaching this from the distance. If you've seen the video, you'll see at about the same time, things escalate. They start running. They come in to assist with the arrest. Why? Because he's not yet under control. Officer Robinson, almost simultaneously with Sergeant Stevens, strikes him in the head with a walkie-talkie, cuts him open, undeniably does injure him because he still is not under control. He has not given his hands up. He's in that dangerous position. That's not so visible on the tape, though, is it? Which part? Hitting on the head. Is it? It is. Okay. It is. I think what may make it a little difficult is that part of the tape was slowed down so that people could watch it and see where the right leg was. Yes. But he clearly did strike him as he approached. You have an officer at the same time who's putting Mr. Shelton in a chokehold, attempting to render him unconscious briefly because of that, because they have not given up the hands. Well, what was an objectively reasonable officer attempting to accomplish with the stomping of the foot that the district court thought might have broken the ankle, depending on which leg it was and so forth? Sergeant Stevens' testimony in the record was he was attempting to distract or get control of the suspect and get him to free his hands. That was his second statement. His first statement was that the guy was supposedly trying to regain his base, and the judge says there's no visual evidence of that on the video. What do you think about that point? Well, the judge did say that, and I guess the point is we have a situation where, hey, still, the suspect has not given up his hands. He's not under control. He's not in custody. I'm asking about the regaining the base argument. Is there any basis for that, or was that a pretextual reason? I don't believe it's pretextual in any means, Your Honor. I think when you look at the video, it is difficult to see that aspect of it with that leg. I would admit that. I mean, the But regardless of what the reason is, we have a situation where the use of force is undeniably called for. We have officers who actually inflicted injury upon Mr. Shelton, where the district court properly held they acted reasonably. This is a very fluid situation. So what were you going to say was the other legitimate reason, if not to prevent him from regaining his base? We still have a situation where the suspect has not given up his hands. He's turtled up. One of the most dangerous positions you can have for the police officers who are attempting to arrest this gentleman. This whole thing occurs because of his actions. How does the stomp help with that, though? It secures a limb that is unsecured. And any time you have any part of the body unsecured, it's still a moving part of the body. It's still a situation where the officers need to obtain control. In the same way that striking a person in the head is. Whether it stuns them, whether it injures them, whatever the case may be, it's a step, it's a tactic that you use to gain control of a suspect who's refusing and continuing to resist arrest. You can see in the video... I suppose the argument would be you don't have to stomp. You know? Stahl came up and the extra gratuitous, arguably, stomp and hold it down with the foot. I think maybe... Is that what bothered the district court, do you think? Good question. I don't know from Judge Ebbinger's decision if that was the issue. By the time Lieutenant Small comes up, he's already secured. Small, I misspoke. Small, I meant. Understood. By the time he comes up, then the suspect is secured. You see in the video Officer Stevens reaches behind himself, pulls out the handcuffs, hands them to one of the officers. They then have control of him. So you're saying maybe Small couldn't have done it that way if the foot weren't already secured? Correct. And we have a situation where... What about just putting your foot on the leg without the stomp? Would that work for a reasonable officer? I think in hindsight, looking at things from a 2020 vision in the safety of our courtroom, our offices, which we're not supposed to... You know, in the field at the time... What a reasonable person for an officer in the field to do when there are four officers on top of the guy who's turtled up. He wants to secure his foot. Could he do it without? I think there are a lot of reasonable things a reasonable officer under those circumstances could have done, including what Sergeant Stevens did. I think that's the situation. These are very fluid, dangerous, quickly evolving situations. And officers make judgment calls. And we know from this court, maybe looking at it in hindsight, it's not a judgment call that we would have made, but does it rise to the level of being plainly incompetent or knowingly illegal as the standards require? And certainly here, I don't think it does. We have a situation where, again, a violent felon is last seen with a handgun after beating a man within an inch of his life, a man who's still in a vegetative state today, who leads police on an over 100 mile an hour cross state high speed chase, crashes his car, flees into the woods, and comes out on the other side, refusing their commands when they have guns, weapons pointed at him, telling him to get on the ground. That's where I think we have to consider this case and come back to what does a reasonable officer, objectively reasonable officer, do on site? Do we have a case directly on point? And to have a case directly on point, we have to have a case that would have told Sergeant Stevens, if you have a violent felon turtled up, suspected to have a handgun, radioed out over the radio to all the officers, handgun, be aware, be alert, be careful, refusing to do everything he refused to do, you've got a situation where you have to do the reasonable, prudent thing that a reasonable officer would do. And I think, honestly, that's just where the district court erred in concluding that there was a fact issue on this. When you look at the facts objectively, you look at the cases, there's no case that would tell you that what Sergeant Stevens did was illegal or violated a known, clearly established right. Well, what level of specificity must the case entail? Well, what the court has told us, Your Honor, is... Does it have to be somebody who's broken the right ankle or the left ankle? No, I mean, I don't think it goes down to that level of breaking a right or a left ankle. I think what you have to look at is the particularized facts of the case. So the cases the district court relied on and that Mr. Sheldon relies on are situations where either A, it was a non-violent felon, that was the Kraut case. Well, the Kraut case, the plaintiff was on the ground... Yeah, the guy was handcuffed and not resisting anymore. Carrolls, the officers said it was a non-violent criminal. The officers did not feel threatened. There was no use of force by the suspects in that case. And Henderson, we've already talked about, again, he was handcuffed. That's the major difference here. This... Let's see, at what point did the officers take possession of a handgun? The handgun was never located. I see you questioning that, Your Honor, but I think in the context to consider that, what the record showed is there was a number of times where Mr. Sheldon, when he led them on a high-speed pursuit, drove down into Sunset Park, Sunset Marina in Rock Island where he was unobserved. There was a long period of time where he was unobserved when he was in the woods after he crashed. We don't know where the handgun was dished, but what we do know is two experienced officers saw, one saw the handgun, one saw the clip or the magazine, and it was radioed out to all the officers, handgun, gun scene. So... They saw the gun and the clip where? In relation to where they took this man down? The gun was seen, Mr. Sheldon was seen sitting on the gun in his car when they attempted, two officers attempted to arrest him in downtown Rock Island. That was when it was last seen. That's what led those two officers... There was a car chase and a foot chase after that? Correct. The car chase started in downtown Rock Island in the business district, went out west on Highway 92, which I know probably doesn't mean anything to all of you. I've been on. Okay. All right. Medium. Okay. Through a marina, he came back out, he had a dead end, crossed the interstate 280 bridge and wiped out just across the bridge. Then he fled on foot into the timber and eventually emerged on the other side. Your Honors, my time is down to a minute and a half. I'd like to save a little for rebuttals. You may. Very well. Thank you for your argument. Thank you, Your Honors. Mr. Fisher, we'll hear from you. Thank you, Your Honor. May it please the court. This is the second time that Officer Stevens has brought up a motion for summary judgment before the district court, claiming he's entitled to qualified immunity for his stomp that connected with Shelton's ankle. Two times the court has stomp served any legitimate restraint purpose. The district court two times found that the video contradicts Stevens' account that Shelton was resisting. That's a little too strong, right, to say it contradicts? I believe it used contradicts. Yeah, but I think you're twisting it around a little bit by the standard. I think the district court is saying more you can't really tell than contradicts. Fair enough. Say the opposite is what contradicts. Fair enough. I'm a little jealous. That's okay. So in two times the district court found that the facts, there are facts and issues that preclude finding summary judgment in favor of Stevens in this case. Now, I want to point out the fact issues here. There's a fact issue on which ankle was stomped on. Mr. Stevens. Now, I understood that, but why does that matter? I mean, is it the idea that if the ankle didn't break, then it was reasonable? I believe that's Mr. Stevens' argument that, well, because in his version of events that he stomped on his right ankle, there's no injury, then there's no excessive force. And in our case, the excessive force, we believe- Did the district court accept that, that if the stomp was on the unbroken ankle, then it was okay as a matter of law, but if it was on the other- I don't think they've reached that decision, though it is a question and one that's come before this court before, whether a de minimis injury is required in order to find excessive force. Oh, I see. There might have been no injury at all to the right ankle. So there'd be an argument that without any injury at all. I see. Okay. Go ahead. Well, your client certainly has nothing to commend himself. What was that, Your Honor? Your client has nothing to commend himself. In other words, was he on- I was answered to Rodney King. Was he on angel dust and all that sort of thing? No, he- Was there any evidence that he was acting bizarre, hysterical? I believe the officers described him looking slightly crazed when they took him down, though I don't believe Stephen saw that in this case. Now, I'm not saying- How is what Stephen's did legally different from what Robinson did? If it's okay to smack a guy in the head with a radio and get him to take his arms out, why wouldn't it be okay to stomp on a guy's leg in order to try to get him to react and take his arms out? Right. And that's a very good question. And I think from the video, it's not clear, I think the district court says that there's a fact issue on whether he's resisting or not. I think the difference between- She said Robinson was okay because he was resisting. Yes. And I think that the difference here is that when Robinson applied the force, he was actively resisting. And when Stephens applied his stomp, that he could have been substantially subdued. There were six officers on top of him by the time Stephens stomped on his left ankle. I thought she said there were just four at that point. Help me with the- I believe by that time it was six. Okay. Well, but the Robinson incident was only a couple- I mean, I've looked at the video, it's just a few seconds before the stomp. You're saying the situation changed materially between the two? I think the district court found that there was maybe a change in circumstance at that point that would change the level of resistance that Shelton was- But isn't it undisputed that he was still turtled, as they say, when the stomp occurred? Well, from the video, they said that that's not clear, Shelton's level of resistance on the video alone, which Stephens has submitted as blatantly contradicts any testimony from Shelton. My question wasn't whether it's unclear what the level of resistance was. My question is, isn't it undisputed that he was not yet secured? He still had his hands under him and was not yet cuffed and so forth? Well, at which point? The time of the stomp. The time of the stomp. He had six officers on top of him. He was choked out to unconsciousness at that point. His level of resistance is probably negligible at that point, at the point of the stomp. And I think that's what the district court- What caused Officer Stephens, it looked like on the video, that if he's walking briskly, then he breaks into a run, what prompted that sudden action? That must have been precipitated by some level of apprehension on his part, on behalf of his fellow officers? I think he testified to that fact. I don't know exactly what's going through his mind, and I don't know if under these standards, other court standards, that we can look at what the officer is thinking subjectively. We can only look at the video and what it says objectively. Is there testimony in the record, and I assume that there is, that substantiates the claim that having your arms in that curtail position proposes extreme dangers to the existing officer? There's testimony to that fact, yes. What's your best- The district court cited Kraut against Gomer, as I read it in the last order, as the principal authority supporting denial of qualified immunity. The opinion says it's unclear any legitimate restraint purpose was served by this action, C. Kraut against Gomer, but that's a case involving, as you know, a guy who was handcuffed and not resisting, and the court said, well, kneeing him in the back and punching him five or six times in the back and doing a knee drop and so forth was gratuitous and unreasonable. Sure. Is that the closest case you have, factually? That's the one the district court cited? Yeah, I believe that comes closest for the- That's really close enough to clearly establish law in this fact pattern? Well, the difference between Kraut in this case is the handcuff issue. Now, no dispute that Officer Stevens is actually the one who handed the handcuffs, but I think what makes this case similar to Kraut is how restrained Mr. Shelton was at that time, his threat level, his level of resistance. Now, I don't dispute the fact that Shelton was fleeing, harassed in a high-speed chase. I don't dispute the fact that he was resisting at one point or that officers believe that he had a gun and was a threat, but at that very moment when the stomp occurred, the question is, what was his level of resistance? How much was he a threat? And I think that's what the district court was getting at is that there was a fact question surrounding his level of resistance. Now, in the Kraut case, remember that the suspect in that case was armed with a knife, and so it was perceived as a threat. He was also in a vehicle that he was resisting harass and had to be hip-tossed out of the vehicle, and he was still resisting that even after the hip-toss, and he eventually gained control of his hands, and then he was handcuffed. The difference seems to just be the handcuff issue. Well, the opinion says he was handcuffed and not resisting at the time of the force that was held unreasonable, and as I understood it here, it was undisputed that your client was not handcuffed and was still resisting. Is that wrong? Well, I think there's a fact question. What he was doing, the video doesn't show that he's resisting. Did he himself say, if anything, it's nothing? Yeah. Go ahead. In other words, is the overarching problem, well, I shouldn't say problem, consideration that whatever injury he may have suffered was almost self-inflicted or self-induced by his failure in the first instance to get onto the ground? Well, that's a good point. In other words, beggar can't be choosy. Right. Well, remember when he was, if you see the video, he has his hands up, doesn't have a gun, and then he's tackled to the ground. I don't know exactly what was going through his mind at that point, but he had just been on a foot chase and then was surrendering, then he's tackled, and then he's underneath four or five, six officers. Well, he certainly went from being pursued in a 100-mile-an-hour chase to, in your words, no, not your words, but is his theory that he's suddenly become docile? Well, I think his level of resistance certainly goes down when he's choked to unconsciousness and then suffers several blows to his side, to his face. All of which was the result of his immediate failure to go to the ground by himself. Yes. What's the evidence that he was unconscious at the time of the stomp? I believe that's from an affidavit and testimony from Officer Scott Lansing or another officer that said, I believe Officer Lansing is the one who said he put him in a chokehold and he lost, Shelton lost consciousness. No, but what says that the loss of consciousness occurred before Stevens stomped on the foot? Is there any evidence of that or is Lansing just saying? No, I don't think there is. All the officers tested, I'm sorry for interrupting. All the officers testified that they were focused on what they were doing and on Shelton and not what other officers were doing. Okay. You didn't reply to the one turtle case that they came up with, Carpenter versus Gage. Do you want to talk about it at all? It granted qualified immunity. It did. It did. And I think in this case, it's a question of fact whether he is actually turtling up or not based on Stevens claims he was and the video doesn't show that he was turtling up or resisting, which the district court mentioned in its holding. But you don't need a video if we have undisputed testimony that he was turtled up at the time. And yeah, Coleman asked, what did your client say? I don't testify as to what he was doing at the time of the stomp. I believe he said he was trying to protect himself from getting hit. So he's balling up. I don't know if he, I don't think he described it as, you know, trying to get back up or turtling up. And in any case, I think he was protecting himself from the would be an admission that his arms were still inside of him, whatever his motive was. Is that the record? I'm not exactly sure. That fact escapes me. I'm sorry. But is there a full deposition of your client? Yes, there is. Yeah. Okay. And he claims to have actually seen the As you know, I bet you know it's in the order in both briefs. Right. Right. I don't know exactly if he could make out who Stevens was or anything like that. But he said he did see somebody standing over him and then stomped down. Yes. Felt the snap and crunch. Yes. Okay. Any further questions? As the musical says, the policeman's lot is not a happy one. So the question is, well, from your standpoint, is there any, well, obviously you're saying don't over-interpret that stomp or under-interpret. In other words, is your theory that this is a case of gratuitous violence or excessive, well, obviously it's excessive, excess force, right? Yeah. I think it's a case of gratuitous use of after Mr. Shelton was substantially subdued by six officers and was more or less restrained, not yet in cuffs, but restrained and no longer a threat. But as your opponent, opposing counsel said this, it still was a fluid situation, wasn't it? Because your client had never really become that docile. I mean, otherwise the officers would not have continued to struggle with him on the ground. I mean, that's largely correct. I'm not going to second guess what the officer was thinking or doing at that point, but the fact remains he's under six officers. The question is, is he really a threat? If there's six officers on top of him, all his body parts are basically under control. And then those of us who have not been police officers might say, well, certainly he could not have harmed any of them having been crushed under their weight, as it were. I mean, that's the argument I suppose you might make. No, not at all. So I think it falls that there's no specific fact issue that hasn't been decided in this matter. But there is, at least in the Crout case, the Henderson case, that a substantially subdued person should not be subjected to gratuitous force when they're substantially restrained. And I think there's a constitutional violation for that excessive force. Well, very well. Thank you for your argument. Mr. O'Rourke, we'll hear from you in rebuttal. Thank you, Your Honor. We just heard from the plaintiffs that the key case that they rely upon is the Crout case. The concession we heard from this podium was the main difference is the When a suspect is handcuffed, hands behind his back, he poses no threat. When a suspect is turtled up, hands underneath, last seen with a handgun, two inches, an officer dies. That's the difference. That's all we need to consider with respect to that concession. Was there a handgun in his hand? He did not have it in his hand at the time, but no one knew that. Was there any indication whatsoever that he might have possessed one? Yes, absolutely. When he was seen, when the officers first... Did he have one? As he was walking away with his hands up, did a weapon protrude from his pockets or something? There was a... The district court recognized, and the facts show, there was a hard object in his front pocket. No one knew what that was at the time, and he was last seen with the gun when the chase started. So a reasonable... It turned out to be the cell phone? Pardon? Yes, it did. Yes. I mean, the fact that he wasn't handcuffed is relevant, but it doesn't mean an officer can use whatever force. There's still limitations, aren't there, on what is reasonable exercise of force, even if a person's not handcuffed, if there are five officers on him? I would agree with that, but as Judge Benton noted, the Carpenter versus Gage case that we cited, that was a situation where the suspect was turtled up and the officer was found objectively reasonable to use a taser. That's our situation. There's no case on... No particularized case on point that would have told Officer Stevens he could not step or stomp on the foot of a turtled up suspect who was believed to have a handgun. Your Honor's mooters. Does it come down to the level of specific... Factual level of specificity? I think to a large degree, the Supreme Court has told us it does. Under the city of Escondido case that this court has cited and discussed repeatedly, there has to be some... The law school's a spotted cow case. I don't mean to be flippant about it. No, I understand. I completely understand, Your Honor. Your Honor, we would respectfully request the court reverse the district court's decision and rule that Sergeant Stevens is entitled to qualified immunity. Thank you. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file an opinion in due course. Counsel are excused. Please call the next case for argument.